IN RE ESTATE OF E. J. GUMP, DECEASED, RESPONDENT, v. FLOYD E. JACOBS, PUBLIC ADMINISTRATOR, APPELLANT.*

Kansas City Court of Appeals. February 14, 1927.

*Corpus Juris-Cyc. References: Appeal and Error, 4CJ, section 2853, p. 876, n. 78; section 2854, p. 882, n. 22; Executors and Administrators, 24CJ, section 541, p. 103, n. 82; section 546, p. 107, n. 31; section 2474, p. 1020, n. 1; section 2519, p. 1050, n. 1.

*William E. Rainey* for respondent.

*Thos. E. Deacy* for appellant.

ARNOLD, J.—This is an appeal from an order and judgment in division 8 of the circuit court of Jackson county, Missouri, sustaining exceptions and objections to the final settlement of appellant as administrator of the estate of E. J. Gump, deceased, in the probate court of Jackson county, Missouri, at Kansas City, and in restating said final settlement.

The facts of record are that E. J. Gump, then a resident of the State of California, died testate in 1923. The will was probated at his domicile and by it he devised three parcels of real estate in Kansas City, Missouri. There was also a personal estate consisting of a cash deposit in the Commerce Trust Company of Kansas City, Missouri of $770.50. An ancillary administration was necessary in Jackson county, Missouri, and appellant, then public administrator of said county, was appointed administrator of the estate, taking charge of the cash item above mentioned. One H. G. Porter had possession and control of the real estate as agent of Mr. Gump, prior to the latter's death and thereafter as agent of the devisees under the will. Porter procured a certified copy of the will and proceedings in probate in the State of California, and filed same in the probate court and the recorder's

office of Jackson county, Missouri. Thereafter appellant in his official capacity was appointed administrator of the estate with the will annexed. Subsequently he duly published his notice of letters, filed his inventory and appraisement and had an inheritance tax appraiser appointed for the purpose of assessing any inheritance tax which might be due the State of Missouri. The inventory filed was as follows:

"The following is a full and perfect inventory of all real estate and a full and perfect inventory and appraisement of all personal estate of said deceased, so far as the same has come to the possession or knowledge of the undersigned administrator or executor of said estate.

"Real Estate as Follows.

"(Note:—Describe real estate here. Do not appraise.)

"All of the east fifty (50) feet of the west one hundred (100) feet of lots eight (8). nine (9), ten (10), and eleven(11), and the east fifty feet (50) of the west one hundred feet (100) of the south ten (10) feet of lot seven (7), all in Park Place, an Addition in and to Kansas City, Jackson county, Missouri.

"The deceased was the lessor under a certain lease dated November 1, 1921, and executed by the deceased to Rufus C. Kemper and William O. Norman for the following described real estate for a period of ninety-nine (99) years, to-wit:

"The south four and twenty-five one hundredths (4 25/100) feet of lot 'E' and all of lots F, G, and H. in block seventy-one (71), McGee's Addition in and to Kansas City, Jackson county, State of Missouri.

"Personal Estate as Follows.

"(Note:—Describe Personal Estate. Give Appraised value.)

. Value.

"Cash on deposit Commerce Trust Company ........ $770.50"

At the May term, 1924, of the probate court, appellant filed his first settlement as follows:

| "Month Date 1923 | | No. of Vouch. | Debit Dollars Cents | Credit Dollars Cents |
|---|---|---|---|---|
| Dec. 13 | Commerce Trust Co. deposit Credits ..................... | | $770.50 | |
| Dec. 20 | Fees paid to witnesses and appraisers .................. | 1 | | $30.00 |
| Dec. 20 | Agnes Appel—notary fees .... | 2 | | 3.50 |
| 1924 | | | | |
| Jan. 16 | The Daily Record—Notice of Letters .................. | 3 | | 6.00 |
| Mar. 26 | Will S. Guinotte—Inheritance Tax Appraiser ............ | 4 | | 140.25 |
| May 22 | Floyd E. Jacobs, administrator's fee on account .... | 5 | | 400.00 |

May 22  T. E. Deacy—Atty's fee .... 6         100.00

                                                    679.75

May 22  Balance cash on hand ............,......$770.50 $770.50"

And at the November term of said court the administrator filed his final settlement, in words and figures as follows:

| "Month Date 1924 | No. of Vouch. | Debit Dollars Cents | Credit Dollars Cents |
|---|---|---|---|
| May 28 Balance cash on hand at last settlement .............. | | $90.77 | |
| Credits. | | | |
| Aug. 14 J. E. Guinotte, Inheritance Tax ,................... 1 | | | 8.96 |
| Nov. 17 The Daily Record—Notice of Final ................. 2 | | | 6.00 |
| Nov. 17 E. W. Klaber—Court Costs (not paid) .............. 3 | | | |
| Nov. 17 F. E. Jacobs Administrator's Fee .................... 4 | | | 45.79 |
| Nov. 17 Thos. E. Deacy—Attorney's Fee .................... 3 | | | 30.00 |
| | | $90.75 | $90.75" |

The final settlement was approved by order of the probate court; to which final settlement exceptions were duly fined and by the court overruled. Thereafter and in due time respondent filed a motion to set aside the said final settlement which was overruled and respondent appealed from such ruling to the circuit court of Jackson county, where the cause was tried *de novo* by the court.

At the trial in the circuit court testimony was introduced tending to show that the real estate owned in Jackson county, Missouri, by E. J. Gump at the time of his death was valued by the inheritance tax appraiser at $67,000. Respondent offered in evidence the original inventory and appraisement of the real and personal property of deceased as filed in the probate court, the semiannual and final settlements, and the testimony of H. G. Porter who testified that during the lifetime of deceased E. J. Gump, he had acted as his agent and that he continued to collect the rents after the owner's death and during the administration of the estate, as agent for the domiciliary executors.

The witness also testified that he had held conferences with the attorney for appellant in reference to the appointment of the inheritance tax appraiser, and at one of these conferences, the said appraiser had accepted the values placed upon the real estate by witness; and

that it was agreed that witness, as agent of the heirs and domiciliary executors, would pay whatever inheritance tax might be assessed against the estate and payment should not be made out of funds in the hands of appellant as administrator. There was no other testimony introduced in behalf of respondent.

Appellant offered the testimony of three practicing attorneys as to the reasonable value to the estate of services of the administrator and his attorney. Robert B. Fitzgerald, attorney, testified that the services rendered by the administrator were of the reasonable value of $250 to $300; F. W. Klaber, lawyer and public administrator, testified the reasonable value of the services of the administrator was $500 to $750, and those of his attorney $250 to $300; Charles A. Stratton, attorney, testified that the reasonable value of the administrator's service to the estate was $450, and that of his attorney, $200.

Thos. E. Deacy, the attorney who represented the appellant in the administration of the estate testified that he represented appellant in the probate court in all matters pertaining to the administration of the estate; that he filed the application and secured appellant's original appointment; that he was present in court at the time the transcript of the will was admitted to probate; that he prepared and filed the second application for the appointment of appellant as administrator with the will annexed; that he prepared and filed the inventory; that he conferred with the probate judge in reference to the appointment of the inheritance tax appraiser and after the appointment of such appraiser he held several conversations with him in reference to the value of the three tracts of land mentioned; that he had several conversations with the agent Porter; and that, due to the efforts of witness, a reasonable value was placed on said real estate; that he had represented appellant at the hearing held by the inheritance tax appraiser in reference to the value of the property of decedent; that witness appeared in court at the time the inheritance tax was filed and the amount fixed; that he prepared the settlements filed by appellant; that he appeared in court in behalf of appellant at the time both the semiannual and final settlements were approved, and that he prepared the final order of discharge.

Witness then attempted to testify as to the services rendered by him for the administrator in his defense to the exceptions and motion filed to set aside the final settlement. This testimony was objected to by counsel for respondents on the ground that where exceptions were made to the report of an administrator and to credits claimed in the final settlement the administrator was not entitled to the services of an attorney in defending against such attacks. The court adopted this view and sustained the objection.

The witness further testified that he, representing Porter as agent of the heirs and domiciliary executors, had entered into an agreement to the effect that Porter was to continue to collect the rent from the

real estate as agent for the domiciliary executors; that appellant, as ancillary administrator, would not ask for an order of the court authorizing him to take charge of the real estate for the purpose of collecting the rents, and that if the money decedent had on deposit in the Commerce Trust Company was insufficient to pay the expenses of the administrator and attorney fees as allowed by the probate court, the domiciliary executors and heirs would advance funds sufficient to pay such deficiency; that appellant had not asked the probate court for an order directing him to take charge of the real estate, and that he did not take charge of same for that reason.

Witness testified that, representing appellant, he had reached an agreement with the agent Porter with reference to the final report and the items claimed as credits therein. Witness further testified that it was the desire of the heirs, as expressed through Porter, that an administration on the estate be had and that the inheritance tax due the State of Missouri be fixed and paid in order that a merchantable title to the real estate might be vested in the heirs of devisees under the will.

No further testimony was offered by either party. The chancellor then entered an order and judgment sustaining the exceptions to the settlements and proceeded to restate the settlements, as follows: That the "witnesses and appraisers will be allowed the sum of $9. The administrator $75, and the attorney $50." In his finding of facts the chancellor stated: "The court cannot find there is any special service rendered by the administrator in this case which would call for the application of that provision of section 295 which provides the court may allow a higher compensation." Further it was found the matter of the real estate never came into the jurisdiction of the administrator in any way and that the only personal estate in Jackson county of which the administrator took charge was a deposit of $770.50 in the Commerce Trust Company; there were no claims against the estate; the real estate had been appraised under the provisions of the inheritance tax law for the purpose of determining the inheritance tax and an appraiser was appointed for that purpose. The appraiser reported that he had consumed twenty-three days in this appraisement (although the valuation of the property was agreed upon, or practically agreed upon, by the agent of the property of Gump before his decease, and representing the heirs afterwards), at $5 per day; that $115 and some odd dollars was allowed the appraiser and some expenses in addition, making the total allowance to the appraiser $140.25. The tax was paid by the heirs and not by or through the estate. The allowances for which the administrator took credit in the first annual settlement and finally were as follows:

Inheritance tax and probate judge ................. $8.96

First annual settlement fees paid to witnesses and
   appraisers ......................................... 30.00

The finding further is:

"Of course the statute allows but a nominal amount for witnesses and appraisers of $3 per day, I think it is. That is equivalent, however, to three days inventorying and appraising a deposit of $770 in the bank. Notary fees $3.50; notice of letters $6.00; inheritance tax appraisal $140.25; Floyd E. Jacobs, administrator's fee on account $400.00; T. E. Deacy, attorney's fee, $100.00.

"On the final settlement: Credits and monies paid out for

| | |
|---|---:|
| the inheritance tax (which appears from the evidence was paid by the heirs) | $8.96 |
| Daily Record notice of final settlement | 5.00 |
| F. E. Jacobs, administrator's fee | 45.79 |
| Thos. E. Deacy, attorney's fee | 30.00 |

"So that the allowances to the administrator and attorney, notary's fee and appraisers, consume the entire estate in the hands of the administrator, $770, leaving clerk costs unpaid."

In sustaining respondent's exceptions to the settlements of the administrator, the court found:

(1) That the $30 item claimed as a credit in the first settlement of the said administrator as fees to witnesses and appraisers is excessive in the sum of $21.

(2) That the item claimed as a credit in such first settlement of Floyd E. Jacobs, administrator's fees on account, $400, is not a proper and legal charge against such estate and that it be disallowed.

(3) That the item claimed as credit in such first settlement of Thomas E. Deacy, attorney's fees of $100 is excessive and not the proper charge against said estate and that it be disallowed.

(4) That the item claimed as a credit in such final settlement J. E. Guinnotte, inheritance tax $8.96 is erroneous and improper.

(5) That the item claimed as a credit in such final settlement, Thomas E. Deacy allowed a fee of $30 is improper, excessive and is disallowed.

(6) That the item claimed as a credit in such final settlement, Floyd E. Jacobs, administrator's fees $45.79, is improper and is disallowed."

Upon rendition of the judgment of the court a motion for a new trial was filed and upon the overruling thereof the administrator brought the case here by appeal.

It is contended we have a right to weigh the evidence. This, of course, is on the theory that this is an equity case. However, the cause was tried to the court as a law case; therefore, we are not authorized to weigh the evidence. Citations on this point are not required. The statute (section 220, Revised Statutes 1919) provides that the administrator, or executor, shall receive as full compensation for his services a commission of five per cent on the personal property

or money arising from the sale of real estate. Section 295, with reference to the compensation to be paid a public administrator provides as follows:

"He shall receive the same compensation for his services as may be allowed by law to executors and administrators, unless the court, for special reasons, allows a higher compensation."

It is appellant's contention that he is entitled to a credit for the reasonable value of legal services rendered by his attorney in defending against the exceptions to his final settlement and the motion to set aside the approval thereof in the probate court and in the circuit court on appeal; and that the court erred in refusing to admit testimony offered by appellant as to what these services were.

Under the facts of record, we hold this contention is without merit. It is conceded the real estate belonging to the estate never passed into the hands of the administrator and therefore the only fund to be administered was the bank deposit of $770.50,—obviously a very simple matter. There is no showing that there were any complications in connection with the administration of that sum such as to bring it within the provisions of section 220 and 295, Revised Statutes 1919. Nor is there any showing of special services rendered. As the real estate never passed into the hands of the administrator, no special services were required in that respect.

A reasonable and equitable view of the situation is that if the administrator's attorney did any service in opposition to the exceptions mentioned, such service was in behalf of the administrator and not of the estate. The conclusion is inevitable that the estate may not equitably have charged against it the fee for an attorney's services advocating an adverse claim. Appellant's citations do not alter this conclusion and the point is ruled against his contention.

Appellant calls attention to the following general proposition of law to the effect that where a finding of the trial court is contrary to, or in disregard of evidence which is not inconsistent and is not contradicted or discredited, the finding will be set aside by the appellate court. Respondent does not refute this plain rule of law and we need not further discuss it, other than to note that the record shows, by all reasonable intendment that the extraordinary pay for which credit is sought is based upon services rendered in connection with the real estate, which never passed into the hands of the administrator, and no service of an attorney in connection therewith was necessary. Furthermore, it has been held that the compensation of an administrator is not a matter within the discretion of the courts but is regulated by statute.. [Garrison v. Trust Co., 77 Mo. App. 333; Roloson v. Riggs, 274 Mo. 522, 536.] In Matson et al. v. Pearson, 121 Mo. App. 120, 97 S. W. 983, it was held that the statute in this respect is to be strictly construed.

It is urged that an allowance made an administrator for himself and his attorney by the probate court will be presumed to be reasonable where no evidence to the contrary was shown at the trial. This may be a general rule but it does not apply in the case at bar. The very facts presented by the record are sufficient to refute such a presumption. The facts show that the amounts allowed in excess of the statutory commission were, in fact, excessive.

Further, it is appellant's contention that his administration of the estate had the effect of clearing the title to the real estate. The basis for his contention would seem to be that, as shown by the testimony of witness Deacy, at and prior to the hearing of the appraiser to fix the inheritance tax levied against the heirs and devisees, the attorney for the administrator took cognizance of matters pertaining to the assessment of said tax. This matter, however, was not in the hands of the administrator and was one with which he had no proper concern, the real estate never having passed into his hands did not require any service on the part of the administrator's attorney for which he could justly receive pay. [State ex rel. v. Brand, 305 Mo. 321; Yeakle v. Priest, 61 Mo. App. 47, 51.] We hold with the trial court that as the real estate never passed into the hands of the administrator, payment for any services relative thereto by his attorney, was unwarranted. There is no substantial evidence that there were any extraordinary services rendered by appellant's attorney entitling him to remuneration other than the statutory fee. We think the judgment was proper and should be affirmed. It is so ordered. *Bland, J.,* concurs; *Trimble, P. J.,* absent.